**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

## UNITED STATE DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL LICEA, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>OLD NAVY, LLC, a Delaware corporation; and DOES 1 through 25, inclusive,<br><br>　　　　　Defendants. | Case No. 5:22-cv-01413-SSS-SP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>[Proposed] Order lodged concurrently herewith]<br><br>Date:　　　March 24, 2023<br>Time:　　　2:00 p.m.<br>Courtroom: 2<br>Judge:　　　Hon. Sunshine S. Sykes |

# **TABLE OF CONTENTS**

**Page(s)**

I.    ARGUMENT ................................................................................................. 1

    A.    Article III Standing to Sue Exists. ................................................... 1

        1.    The First Amended Complaint Has Sufficiently
            Alleged an Injury In Fact to Plaintiff's Dignity. .................. 1

        2.    The Complaint Has Sufficiently Alleged an Injury to
            Plaintiff's Dignity That Is "Fairly Traceable" to
            Defendant's Conduct. ........................................................... 2

    B.    Plaintiff Has Standing to Seek Injunctive Relief. ........................... 3

    C.    Subdivision (a) of Section 631 of the California Penal Code
        Has Four Distinct Clauses All of Which Are at Issue. ..................... 4

    D.    The First Clause Is Actionable. ........................................................ 4

        1.    The First Clause Includes the Conduct of Participants
            to Internet Communications. ................................................ 4

            a.    Unlike the Federal Wiretap Act, the First
                Clause Provides No Direct Party Exception. .............. 4

            b.    The Undefined Term "Unauthorized" Within
                Section 631 Is Intended to Include Lack of
                Consent by the Consumer. .......................................... 5

            c.    *Rogers v. Ulrich* Is Unpersuasive. ............................... 6

            d.    *Smith v. LoanMe, Inc.* Provides Important
                Guidance. ..................................................................... 8

    E.    The Second Clause Is Actionable. .................................................... 9

        1.    The FAC Alleges that a Third Party Violated the
            Second Clause. .................................................................. 10

        2.    The FAC Plausibly Alleges the "While" "In Transit
            or Passing Over" Requirement of the Second Clause ......... 13

3. Defendant's Interpretation of the FAC Fails to Draw All Reasonable Inferences in Plaintiff's Favor. ................................... 16

F. The Third and Fourth Clauses Are Actionable. ............................................ 16

G. The Term "Landline Telephone" Should Be Broadly Construed to Include Defendant's Computer Equipment. ............................ 17

H. The FAC Sufficiently Alleges the Absence of Consent to Defendants' Wrongdoing. ................................................................ 18

1. Defendant's Reliance on *Smith v. LoanMe, Inc.* Is Misplaced. .......................................................................... 19

CERTIFICATE OF COMPLIANCE .................................................................... 26

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Adler v. Community.com, Inc.*,
  2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) (Blumenfeld, J.) ........................15

*Backer ex rel. Freedman v. Shah*,
  788 F.3d 341 (2d Cir. 2015).........................................................................3

*Barker v. Riverside County Office of Education*,
  584 F.3d 821 (9th Cir. 2009) ......................................................................16

*Bayer v. Neiman Marcus Group, Inc.*,
  861 F.3d 853 (9th Cir. 2017) .........................................................................3

*Byars v. The Goodyear Tire & Rubber Co.*,
  2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) ............................13, 17

*Campbell v. Facebook Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ...........................................................13, 18

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) .....................................................................1

*Carrese v. Yes Online Inc.*,
  2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) (Otero, J.) ...................................1

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*,
  867 F.3d 1093 (9th Cir. 2017) ......................................................................3

*Cody v. Boscov's, Inc.*,
  No. 8:22-cv-01434-SSS-KK, Doc. 47 (C.D. Cal. Mar. 3, 2023) ......................18

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ........................................................................3

*Federal Election Comm'n v. Cruz*,
  142 S. Ct. 1638 (2022).................................................................................3

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) (Beeler, Mag. J.)................................6, 13

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ........................................................................2, 3

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021).... 1, 6, 14, 15

*In re Google Inc. Gmail Litig.*,
  2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....................................17

*In re Vizio, Inc.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.)............................14

*Javier v. Assurance IQ, LLC*,
  2022 WL 1744107 (9th Cir. May 31, 2022)..................................18, 19

*Javier v. Assurance IQ, LLC*,
  2023 WL 114225 (N.D. Cal. Jan. 5, 2023) (Breyer, J.)........................ 10, 11, 13

*Langer v. Kiser*,
  57 F.4th 1085 (9th Cir. 2023) ..............................................................3

*Mastel v. Miniclip*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........................................14, 15

*McCabe v. Six Continents Hotels, Inc.*,
  2014 WL 465750 (N.D. Cal. Feb. 3, 2014) ........................................18

*Mireskandari v. Daily Mail*,
  2013 WL 12129559 (C.D. Cal. July 30, 2013) (Morrow, J.) ......................14, 15

*NEI Contracting and Engineering, Inc. v. Hanson Aggregates Pacific
  Southwest, Inc.*,
  2016 WL 4886933 (S.D. Cal. Sept. 15, 2016)....................................18

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998)................................................................................9

*Osgood v. Main Street Marketing, LLC*,
  2017 WL 131829 (S.D. Cal. Jan. 13, 2017) ........................................1

*Popa v. Harriet Carter Gifts, Inc.*,
  45 F.4th 687 (3d Cir. 2022) ................................................................4

*Powell v. Union Pacific Railroad Co.*,
  864 F. Supp. 2d 949 (E.D. Cal. 2012) ................................................6

*Raffin v. Medicredit, Inc.*,
    2016 WL 7743504 (C.D. Cal. Dec. 19, 2016) (King, J.) ...................................... 1

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........................................... *passim*

*Roberts v. Wyndham Int'l, Inc.*,
    2012 WL 6001459 (N.D. Cal. Nov. 30, 2012) ............................................ 17, 18

*Rodriguez v. Google LLC*,
    2021 WL 6621070 (N.D. Cal. Aug. 18, 2021) ................................................. 14

*Rodriguez v. Google LLC*,
    2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ...............................................15, 16

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021) (Aenlle-Rocha, J.) ......................... *passim*

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)], ..................................................................................... 1

*Stasi v. Inmediata Health Group Corp.*,
    501 F. Supp. 3d 898 (S.D. Cal. 2020) .............................................................. 1

*Tourgeman v. Collins Financial Servs., Inc.*,
    755 F.3d 1109 (9th Cir. 2014) .................................................................... 2, 3

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................... 16

*Williams v. What If Holdings, LLC*,
    2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ...........................................6, 13

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) (Holcomb, J.) ............................. *passim*

**California Cases**

*Flanagan v. Flanagan*,
    27 Cal.4th 766 (2002) ...................................................................................... 2

*Friddle v. Epstein*,
    16 Cal. App. 4th 1649 (1993) ................................................................... 1, 2, 3

*Kearney v. Salomon Smith Barney, Inc.*,
   39 Cal.4th 95 (2006) ...................................................................................7, 8

*Negro v. Superior Court*,
   230 Cal. App. 4th 879 (2014) ............................................................................18

*Nolan v. City of Anaheim*,
   33 Cal.4th 335 (2004) ...........................................................................................8

*People v. Conklin*,
   12 Cal.3d 259 (1974) ..............................................................................................4

*People v. Guzman*,
   11 Cal. App. 5th 184 (2017) ................................................................................2

*People v. Jones*,
   30 Cal. App. 3d 852 (1973) ............................................................................5, 8

*People v. Superior Court*,
   13 Cal. App. 3d 545 (1970) ..................................................................................5

*People v. Trieber*,
   28 Cal.2d 657 (1946) .......................................................................................5, 8

*Ribas v. Clark*,
   38 Cal.3d 355 (1985) ...................................................................... 7, 8, 11, 12

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) .....................................................................5, 6, 7, 8

*Smith v. LoanMe, Inc.*,
   11 Cal. 5th 183 (2021) ............................................................................ *passim*

*Tuolumne Jobs & Small Business Alliance v. Superior Court*,
   59 Cal. 4th 1029 (2014) ......................................................................................20

*Warden v. Kahn*,
   99 Cal. App. 3d 805 (1979) .............................................................................5, 6

**U.S. Constitituion**

Article III..................................................................................................................1

**Federal Statutes**

18 U.S.C.
    § 2510 *et seq.* ........................................................................4
    § 2511(2)(d) ........................................................................4
    Federal Wiretap Act ............................................................4

Americans with Disabilities Act of 1990 ....................................3

Fair Credit Reporting Act .........................................................1

**Federal Regulations**

47 C.F.R. § 9.3 ....................................................................18

**California Statutes**

Penal Code
    § 630 ............................................................................7, 8
    § 630 *et seq* ...................................................................1
    § 631 ........................................................................ *passim*
    § 631(a) ..................................................................... *passim*
    § 632 ............................................................................8
    § 632.5(a) ......................................................................9
    § 632.6(a) ......................................................................9
    § 632.7 ..................................................................... *passim*
    § 632.7(a) ...............................................................9, 17, 18
    § 632.7(c)(3) ...............................................................17, 19
    § 640 ............................................................................5
    California Invasion of Privacy Act ................................... *passim*
    Chapter 1.5 of Title 15 of Part 1 .......................................7

**Other Authorities**

13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed.
    Prac. & Proc. Juris. (3d ed. Apr. 2022 Update)
    § 3531.5 ........................................................................2
    n.61 ............................................................................2
    n.70 ...........................................................................2, 3
    n.73 ............................................................................2

https://www.britannica.com/technology/Internet/Society-and-the-Internet
    (last visited Feb. 23, 2023) ..............................................17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     ARGUMENT

**A.     Article III Standing to Sue Exists.**

   **1.     The First Amended Complaint Has Sufficiently Alleged an Injury In Fact to Plaintiff's Dignity.**

The Ninth Circuit has held that claims under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 *et seq*., protect concrete, substantive privacy interests, which is sufficient to confer standing.  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1116-19 (9th Cir. 2020); *Stasi v. Inmediata Health Group Corp.*, 501 F. Supp. 3d 898, 909 (S.D. Cal. 2020) ("the Ninth Circuit has found, in near uniformity, that intangible injuries based on alleged violations of privacy-related statutes are sufficiently concrete"); *see also Raffin v. Medicredit, Inc.*, 2016 WL 7743504, at *2-*3 (C.D. Cal. Dec. 19, 2016) (King, J.); *Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *5-*6 (C.D. Cal. Oct. 13, 2016) (Otero, J.).

"[A]llegations of violations of Plaintiffs' statutory rights under CIPA, without more, constitute injury in fact because instead of a bare technical violation of a statute, as was the case under the FCRA considered in *Spokeo*[*, Inc. v. Robins*, 578 U.S. 330 (2016)], a CIPA violation 'involves much greater concrete and particularized harm ... a violation of privacy rights', and therefore, a violation of CIPA is a 'violation of a procedural right granted by statute ... sufficient ... to constitute injury in fact.'"  *Osgood v. Main Street Marketing, LLC*, 2017 WL 131829, at *7 (S.D. Cal. Jan. 13, 2017).  Any violation of the ***substantive*** right to privacy is not a technical or harmless violation.  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598 (holding that CIPA codifies "a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing") (citing *Campbell*).

Plaintiff's dignitary interest is intended to be protected by the statutes at issue here, namely, CIPA.  *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993) ("***Any***

*invasion of privacy involves an affront to human dignity*") (emphasis added). Notably, sections 631 and 632.7 do not impose any confidentiality requirement. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 n.3 (N.D. Cal. Oct. 23, 2019) (citing *People v. Guzman*, 11 Cal. App. 5th 184, 192 n.7 (2017)); *Flanagan v. Flanagan*, 27 Cal.4th 766, 771 n.2 (2002).

> **2.      The Complaint Has Sufficiently Alleged an Injury to Plaintiff's Dignity That Is "Fairly Traceable" to Defendant's Conduct.**

As the Ninth Circuit has explained, "[w]hen the injury in fact is the violation of a statutory right that we inferred from the existence of a private cause of action, causation and redressability'—the two other elements of standing—'will usually be satisfied.'" *Tourgeman v. Collins Financial Servs., Inc.*, 755 F.3d 1109, 1116 (9th Cir. 2014) (citation omitted).

Although Defendant seems to implicitly challenge the causal connection between Plaintiff's injury to his dignity and Defendant's alleged wrongdoing by implicitly arguing that Plaintiff suffered a self-inflicted injury, a well-recognized treatise on federal practice has explained, however, "Self-inflicted injury may seem a suspicious basis for standing.  It is clear, however, that no rigid lines are drawn on this basis."  13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3531.5 (3d ed. Apr. 2022 Update) ("Wright, Miller & Cooper").  That treatise further explained, "Standing is not defeated merely because the plaintiff has in some sense contributed to his own injury."  *Id.* § 3531.5 & n.70.  "A self-inflicted injury defeats standing only if the injury is ***so completely due to the plaintiff's fault as to break the causal chain***."  *Id.* at n.70 (emphasis added) (citation omitted); *Id.* at n.73 ("Standing is defeated only if it is concluded that the injury is ***so completely due to the plaintiff's own fault as to break the causal chain***.") (emphasis added).

Notably, such treatise cited in support as illustrative the U.S. Supreme Court's landmark decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982). Wright, Miller & Cooper, *supra*, § 3531.5 & n.61.  *Havens* continues to be recognized

as supporting tester standing even by the U.S. Supreme Court itself.  *See Federal Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022) (citing *Havens*) (rejecting the recognition of an exception to traceability for injuries that a party purposely incurs).

Also, the Ninth Circuit has repeatedly cited *Havens*.  *Langer v. Kiser*, 57 F.4th 1085, 1094 (9th Cir. 2023); *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017) ("*CREEC*"); *Tourgeman*, 755 F.3d at 1115-16.  Indeed, in *Langer*, the Ninth Circuit recently held that the fact that the plaintiff is a "serial litigant" "has no place in our standing analysis." *Langer*, 57 F.4th at 1094; *CREEC*, 867 F.3d at 1096 (holding that "a plaintiff has constitutional standing" even if "her only motivation for visiting a facility is to test it for ADA compliance"); *id.* at 1102.

The mere fact that *Havens*, *Langer*, and *CREEC* are all discrimination cases is a distinction without a difference because the ***dignitary*** harm in civil rights cases,[1] is the same type of intangible harm that is at issue in all CIPA cases.  *Friddle*, 16 Cal. App. 4th at 1660-61.

Here, the injury to Plaintiff's dignity was "not solely attributable to" "[P]laintiff's actions."  Wright, Miller & Cooper, *supra*, at n.70 (citing *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015)).  Rather, the FAC makes it clear that Defendant's unlawful conduct contributed to causing the injuries either solely or almost entirely on its own.

**B.    Plaintiff Has Standing to Seek Injunctive Relief.**

Plaintiff has standing to seek injunctive relief.  The Ninth Circuit's decision in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 961, 967, 969-70 (9th Cir. 2018), is directly on point.

Injunctive relief will be the only way to ensure that Plaintiff can use Defendant's chat feature in the future without unlawful eavesdropping by an independent, third party

---

[1] *See Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 874 (9th Cir. 2017).

taking place.

**C.   Subdivision (a) of Section 631 of the California Penal Code Has Four Distinct Clauses All of Which Are at Issue.**

Subdivision (a) of Section 631 of the California Penal Code has four distinct clauses. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) (Holcomb, J.). All four clauses are at issue here.

**D.   The First Clause Is Actionable.**

**1.   The First Clause Includes the Conduct of Participants to Internet Communications.**

Defendant contends that Plaintiff's section 631(a) claim fails as a matter of law because of a party exemption. (Def.'s Mem. at 4:15-5:21.) Defendant is wrong.

**a.   Unlike the Federal Wiretap Act, the First Clause Provides No Direct Party Exception.**

There is no party exemption under the first clause of section 631(a). Unlike the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, which expressly sets forth a direct party exception to liability, *see* 18 U.S.C. § 2511(2)(d); *Popa v. Harriet Carter Gifts, Inc.*, 45 F.4th 687, 694 (3d Cir. 2022), ***section 631(a) of the Penal Code contains no such direct party exception***. *See People v. Conklin*, 12 Cal.3d 259, 270 (1974). Section 631(a) imposes an "all-party consent rule" unlike the Federal Wiretap Act. *Conklin*, 12 Cal.3d at 270. If the California Legislature intended for section 631(a) to duplicate the scope of the Federal Wiretap Act by carving out a direct party exception, then surely the Legislature would have done so by now given that the Wiretap Act has been in existence for many decades since 1968 (or since 1986 when that Act was amended). Thus, any reliance by Defendant on how the Federal Wiretap Act is interpreted in Defendant's reply would be misplaced.

Indeed, it is highly significant that section 631 of the Penal Code includes the following clause as part of the third clause:

"or who uses, or attempts to use, in any manner, or for any purpose, or to

communicate in any way, any information so obtained…"

(Cal. Penal Code § 631(a).)  Such language is inconsistent with a party exemption.

### b. The Undefined Term "Unauthorized" Within Section 631 Is Intended to Include Lack of Consent by the Consumer.

Although *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975), which is a decision heavily cited by Defendant for its party exemption analysis,[2] noted that the term "unauthorized connection" (within the first clause of section 631) was "vague and nowhere defined," *Rogers*, 52 Cal. App. 3d at 898, *Rogers* failed to recognize that in *People v. Jones*, 30 Cal. App. 3d 852 (1973), the Court of Appeal, in interpreting the then-existing version of section 631 of the Penal Code enacted in 1967, held that the word "unauthorized" before the word "connection" should be interpreted to mean that the "authorization" required for a legal wiretap is the "consent of the subscriber to the telephone."  30 Cal. App. 3d at 854.  If the subscriber to the telephone "did not consent to the tap," *id.*, then the connection is "unauthorized" under the then-applicable section 631 of the Penal Code.  *Jones*, 30 Cal. App. 3d at 854.

In support, *Jones* cited *People v. Trieber*, 28 Cal.2d 657 (1946), which, in turn, interpreted the then-applicable section 640 of the Penal Code as holding that "a telephone company cannot authorize others to make a connection to a subscriber's individual station ***without his approval***."  *Id.* at 662 (emphasis added).  Notably, former section 631 of the Penal Code was derived from former section 640 of the Penal Code,[3] 30 Cal. App. 3d at 854, the latter of which was construed by the High Court as "prohibiting wire tapping" and "forbids unauthorized interception of private messages," *Trieber*, 28 Cal.2d at 662.

---

[2] Although Defendant also cited *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979), *Warden* relied exclusively upon *Rogers* in support of the proposition that "section 631, which is quite ambiguous, has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."  *Warden*, 99 Cal. App. 3d at 811 (citing *Rogers*).

[3] Section 631 of the Penal Code was originally enacted in 1967, which was the same year in which the Legislature repealed the predecessor statute, section 640 of the Penal Code.  *People v. Superior Court*, 13 Cal. App. 3d 545, 548 (1970).

Thus, the undefined term "unauthorized connection" within the first clause of section 631 includes circumstances in which the **consumer** has not provided his or her consent to other participants' use of information obtained from a wire communication.

### c. *Rogers v. Ulrich* **Is Unpersuasive.**

Defendant's reliance upon *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975), and various federal decisions including *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021), *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022), *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) (Beeler, Mag. J.), and *Powell v. Union Pacific Railroad Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012), is misplaced.[4]  *Rogers* quoted only a portion of the then-applicable version of Penal Code section 631 in footnote 1 of its decision. *Rogers*, 52 Cal. App. 3d at 898 n.1.  Notably, *Rogers* omitted significant portions of statutory language that is also contained in subdivision (a).[5] Thus, *Rogers*'s conclusion that the then-applicable version of section 631 of the Penal Code does not include "participant recording" ignored a crucial portion of the statute as part of its analysis.  This matters because *Rogers* explained that "[a]s to the third [prohibited] method" "of obtaining information being sent over a telephone or telegraph line," "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received." *Rogers*, 52 Cal. 3d at 898.  The omitted clause mentioned above demonstrates that even if a participant to a communication does not intercept the message while it "is in transit," the

---

[4] *In re Facebook, Inc.*, relied solely upon *Warden* without engaging in any independent, persuasive analysis. 956 F.3d at 607.  *Graham* relied upon *Rogers* and *In re Facebook, Inc.* without engaging in any independent, persuasive analysis. 533 F. Supp. 3d at 831. *Williams* relied upon *Warden* and *Rogers* without engaging in any independent, persuasive analysis. *Williams*, 2022 WL 17869275, at *2.  *Powell* relied heavily upon *Rogers* and *Warden*.  *Powell*, 864 F. Supp. 2d at 955.
[5] *Rogers* omitted the clauses: "***or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained***, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section ...." (Cal. Penal Code § 631(a)) (emphasis added).

Legislature intended to prohibit the unauthorized use "in any manner" "or for any purpose" "or to communicate in any way" "any information" obtained via such use. Surely, that includes recordings of private communications exchanged via a wire.

Furthermore, although *Rogers* relied upon section 630 of the Penal Code for its "declaration of legislative finding and intent," *Rogers*, 52 Cal. App. 3d at 898-99, *Rogers* erred in its interpretation of section 630. *Rogers* stated that section 630 "speaks of preventing eavesdropping and other invasions of privacy, thus suggesting that participant recording was not meant to be included." *Id.* at 899. Simply put, *Rogers* overemphasized the reference to "eavesdropping" within section 630. The main gist of section 630 is that "advances in science and technology" had created new opportunities via "new devices and techniques" implicitly a reference to recording devices including tape recorders, by way of example, that "created a serious threat to the free exercise of personal liberties," and that the Legislature intended to protect "the right of privacy" via the CIPA, *i.e.*, Chapter 1.5 of Title 15 of Part 1 of the Penal Code. Indeed, in *Ribas v. Clark*, 38 Cal.3d 355 (1985), in which the statute at issue was section 631, *Ribas*, 38 Cal.3d at 359, the Supreme Court explained that:  "In enacting this statute, the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society." (Pen. Code, § 630.) This philosophy appears to lie at the heart of virtually all the decisions construing the Privacy Act."  38 Cal.3d at 359.  Thus, section 630 sets forth the public policy that favors Plaintiff's interpretation.  In *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021), the Supreme Court characterized the Legislature's intent as reflective of the entire CIPA.  (*Smith*, 11 Cal. 5th at 199) ("In enacting [the Invasion of Privacy Act] ...") (quoting *Ribas*).  Defendant's analysis fails to address such public policy.

Indeed, if section 630 states the Legislature's intent solely to address third party eavesdropping on private communications in CIPA, then how does one reconcile the Supreme Court decisions in *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 122

(2006) ("it is unlawful under California law for a party to a telephone conversation to record the conversation without the knowledge of all other parties to the conversation"), pertaining to section 632 and *Smith* pertaining to section 632.7? Notably, section 632 of the Penal Code was enacted in 1967 as part of CIPA. The Supreme Court has characterized section 632 as "[a] foundational component of [CIPA]". *Smith*, 11 Cal. 5th at 191. Needless to say, *Rogers* was decided in 1975, and so it did not have the subsequent guidance provided in *Kearney* and *Smith* addressing the indisputable fact that CIPA provisions are not limited to eavesdropping by third parties.

Furthermore, as mentioned above, *Rogers* failed to recognize the long history by which the term "unauthorized" had been interpreted to include circumstances in which the consumer has not provided his or her consent to other participants' use of information obtained from a wire communication. *Jones*, 30 Cal. App. 3d at 854; *Trieber*, 28 Cal.2d at 662.

Although *Ribas v. Clark*, 38 Cal.3d 355 (1985), cited *Rogers* for the proposition that "Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties," 38 Cal.3d at 359, *Ribas* had no occasion to decide the question as to whether section 631 included the conduct of *participants* to wire communications. *Nolan v. City of Anaheim*, 33 Cal.4th 335, 343 (2004) ("A decision … does not stand for a proposition not considered by the court.").

Finally, although *Rogers* referred to the significance of "eavesdropping" within section 630, it is beyond dispute that the first clause of section 631(a) prohibits the act of wiretapping instead of eavesdropping. (Cal. Penal Code § 631(a)) ("Any person who ... intentionally taps, or makes an unauthorized connection ...."). Thus, at most, *Rogers* should be narrowly interpreted as applicable only to claims asserting the violation of the second clause regarding eavesdropping.

### d. *Smith v. LoanMe, Inc.* Provides Important Guidance.

*Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021), supports Plaintiff's position because the Supreme Court: (1) held that "section 632.7 applies to parties as well as

nonparties," 11 Cal. 5th at 188, despite the language of that statute referring to "intercepts" or "receives," which the Court of Appeal therein (incorrectly) construed as referring to only nonparties; (2) rejected the Court of Appeal's conclusion that parties to a call were excluded from section 632.7's scope based on the Court of Appeal's reasoning that "parties to a call normally consent to other participants' 'receipt' of their input," 11 Cal. 5th at 194; (3) held that under a plain meaning analysis, a broad interpretation of section 632.7 to include parties to a phone call (involving a cellular phone or cordless phone) was the more plausible reading of section 632.7(a), 11 Cal. 5th at 194; (4) analyzed the legislative history of section 632.7, *id.* at 196-99, and cited with approval *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998), for the proposition that statutory prohibitions "often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed," *Smith*, 11 Cal. 5th at 198-99; (5) cited its broader interpretation as better promoting the statutory scheme's goal of protecting privacy in communications, *Smith*, *id.* at 199-200; (6) noted that public policy is appropriate to consider as part of any statutory interpretation analysis, *id.* at 190 ("If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and ***public policy***.") (emphasis added); and (7) described how "section 632.7(a)'s lack of a malice requirement" "function[s] to describe a class of potential perpetrators that includes parties, even if sections 632.5(a) and 632.6(a) do not" because the latter two provisions contain the word "maliciously," 11 Cal. 5th at 195.

Here, there is nothing specific in the language of subdivision (a) that excludes a party to the chat communication at issue from being liable for violating section 631(a). Also, there is a noticeable lack of any ***malice*** requirement in subdivision (a), which functions "to describe a class of potential perpetrators that includes parties".  *Smith*, 11 Cal.5th at 195.

**E.**     **The Second Clause Is Actionable.**

**1.      The FAC Alleges that a Third Party Violated the Second Clause.**

Defendant argues that the second clause of section 631(a) could not have been violated because Defendant, itself, cannot be a third party eavesdropper who violated such clause.  (Def.'s Mem. at 4:15-5:21.)   Assuming *arguendo* that Defendant itself cannot be held liable for violating the second clause (which is disputed for the reasons set forth above in I.C.1, *supra*), Defendant ignores that it employed an independent, third party eavesdropper who violated such clause.  (FAC ¶ 11.)  The decisions in *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *3-*6 (N.D. Cal. Jan. 5, 2023) (Breyer, J.), *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520-21 (C.D. Cal. 2021) (Aenlle-Rocha, J.), *Yoon*, 549 F. Supp. 3d at 1081, and *Revitch*, 2019 WL 5485330, at *2, support Plaintiff's position that an independent, third party company violated the second clause as an eavesdropper.  (FAC ¶¶ 11-12.)  *Saleh* explained that "FullStory is a separate legal entity that offers 'software-as-a-service' and not merely a passive device.  Defendants' argument would imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party.  The text of section 631(a), however, does not contain any such exception ...."  *Saleh*, 562 F. Supp. 3d at 520.  In support, *Saleh* cited *Revitch*, the latter of which explained that "it cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly. That person remains a third party, even as a direct recipient of the speaker's communication."  2019 WL 5485330, at *2; *see also Yoon*, 549 F. Supp. 3d at 1081 (citing *Revitch*) ("[I]s Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door?  This is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay.").

The recent decision in *Javier v. Assurance IQ, LLC*, 2023 WL 114225 (N.D. Cal. Jan. 5, 2023) (Breyer, J.), is directly on point.  In *Javier*, the district court held after a

comprehensive analysis that the third-party eavesdropper could be liable under the second prong of section 631(a) despite the defendants' characterization of the third party as a mere "extension" of the party to the communication, i.e., the website owner/operator. *Id.* at *3-*6. After recognizing dueling sets of cases on this precise issue, the court explained why the case law holding that software vendors are "extensions" of the websites that employ them are unpersuasive as follows:

> "There are two problems with this reading of Section 631. The first is that it interprets the second prong of the statute—"willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"—based on the intentions and usage of the prospective third party. *See* Cal. Penal Code § 631(a). But the third prong of the statute already penalizes "use"—"us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." *Id.* Thus, ***reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)***. The second problem with this view is that it was not the California Supreme Court's stated rationale in *Ribas*: The *Ribas* Court did not consider the wife's friend's intentions or the use to which they put the information they obtained. Instead, it emphasized the privacy concerns at issue with having an "unannounced second auditor" listening in on the call, when Section 631 concerns "the right to control the nature and extent of the firsthand dissemination of [their] statements." *Ribas*, 38 Cal. 3d at 360–61.

> There are only two other grounds upon which to conclude that [third party] is not an "unannounced second auditor" of the interaction between [plaintiff] and [website owner/operator]: (1) If [third party] does not have the capability to use its record of the interaction for any other purpose (just as a tape recorder has no independent capability to divulge the recording for any other purpose but that of

its owner); or (2) the ubiquity of services like [third party] on the internet effectively renders it party to the "firsthand dissemination" of [plaintiff's] information to [website owner/operator]. *Id.* As to the first, [plaintiff] pleads that [third party] monitors, analyzes, and stores information about visits to [website owner/operator's] websites, and that ***[third party] can use that information for other purposes, even if [plaintiff] has not alleged that they have done so in this case***. *See, e.g.*, SAC ¶¶ 21–25, 57, 62. As the court in *Yoon v. Lululemon* articulated, this is "beyond the ordinary function of a tape recorder." *Yoon*, 549 F. Supp. 3d at 1081. As to the second, [plaintiff] pleads that he was "unaware at the time that his keystrokes, mouse clicks, and other electronic communications ... would be disclosed to ActiveProspect," and the Court treats this allegation as true on a motion to dismiss. *See* SAC ¶ 4.

Defendants' arguments to the contrary are also unavailing. First, Defendants contend that the ubiquity of third-party tools like [third party's] software "would force websites to either expressly disclose" the presence of those tools, or "create those tools in-house." Mot. at 10. Defendants call the first option "technologically impractical and far-from-user-friendly" and the second "wildly inefficient." *Id.* ***The acquisition of consent when visiting websites (for the collection of cookies, for example) is a regular occurrence and hardly particularly "technologically impractical."*** Second, Defendants argue that "Plaintiff would have no claim if Assurance had created the TrustedForm software itself." *Id.* at 9. This is true. But under Section 631, it has always mattered who is holding the tape recorder: If Rogers is holding it, there is no claim; but if Ribas is, there surely is one. This is because the *Ribas* Court viewed "the right to control the nature and extent of the firsthand dissemination of [one's] statements" as critical to the purposes of Section 631, and there is no reason to suspect that it would decide differently in this context. *Ribas*, 38 Cal. 3d at 361.

Thus, [plaintiff] has plausibly alleged that [third party] is a third party under Section 631, and Defendants' argument that [third party] is an "extension" of [website owner/operator] does not provide a basis for dismissal at this stage." *Javier*, 2023 WL 114225, at *6 (emphasis added); *see also Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (drawing a sharp distinction between allegations of recordation that is "routine documentation" as opposed to "data mining") (noting that the outcome of its holding would have been different if the third party "affirmatively engages with that data in any way other than to store it"). Here, the FAC affirmatively alleges that an independent, third party engaged in data mining of consumers' chat sessions. (FAC at 2:2-5) ("Defendant ... allows a third party to eavesdrop on such communications ... to harvest data for financial gain.").

Defendant's reliance upon *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021), is misplaced. Although *Graham* sought to distinguish *Revitch* because the latter decision purportedly involved a fact pattern in which the vendor "used the data itself," *Graham*, 533 F. Supp. 3d at 832, *Revitch* drew no such distinction. And, *Yoon* was not persuaded by *Graham*. *Yoon*, 549 F. Supp. 3d at 1081.

## 2.   The FAC Plausibly Alleges the "While" "In Transit or Passing Over" Requirement of the Second Clause.

Defendant challenges the FAC's allegations of intercepted communications by a third party company while "in transit" as conclusory. (Def.'s Mem. at 5:22-8:5.) This Court should reject Defendant's argument. *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[T]he complaint's allegation that users' messages were intercepted in transit is to be taken as true at this stage of the case."); *Byars v. The Goodyear Tire & Rubber Co.*, 2023 WL 1788553, at *4 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) (citing *Campbell*). Paragraphs 11 and 28 of the FAC suffice.

Defendant ignores case law recognizing as plausible allegations regarding the existence of software technology called "Session Replay," which "embeds snippets of code that watch and record, in real time, 'a visitor's every move on a website,'" and

which enables the website to "capture data regarding visitors to [the merchant's] website." *Saleh*, 562 F. Supp. 3d at 509; *see also Yoon*, 549 F. Supp. 3d at 1077; *Revitch*, 2019 WL 5485330, at *1.  In *Saleh*, the Court cited the allegation that the third party whose software was embedded into a website's code "records the website user's interactions locally in the user's browser in real time, and then transmits that information to [the third party's] recording servers every few seconds, which [the third party] then makes available to its clients." *Saleh*, 562 F. Supp. 3d at 521.  The Court held that the section 631(a) claim therein plausibly alleged a cognizable claim.  *Id.* at 521.  *Yoon* and *Revitch* lend additional support.  The Court can and should reasonably infer from the FAC's allegations that Defendant and its third party use similar embedded computer code to capture the website user's interactions while using Defendant's chat feature.  (*See* FAC ¶ 11.)

As the Ninth Circuit has held, the communication to the undisclosed recipient of Plaintiff's communication need not arrive **before** it is received by the intended (disclosed) recipient.  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608 (holding that section 631(a) claims can be predicated upon "simultaneous," unknown duplication of user's communications to intended recipient); *see also Rodriguez v. Google LLC*, 2021 WL 6621070, at *4 (N.D. Cal. Aug. 18, 2021) (indicating that the plaintiffs' first amended complaint had pled the "requisite § 631 simultaneity," but that the operative complaint no longer pled it); *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1226-27 (C.D. Cal. 2017) (Staton, J.).

As such, Defendant's reliance upon *Mastel v. Miniclip*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021), is misplaced.  In *Mastel*, the district court stated that "the crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, i.e., **before** it reached its intended recipient." *Id.* at 1137 (emphasis added).  In support, *Mastel* cited *Mireskandari v. Daily Mail*, 2013 WL 12129559, at *10 n.44 (C.D. Cal. July 30, 2013) (Morrow, J.), but *Mireskandari* made no determination that the communication at issue

must be read by the wrongdoer in violation of the second clause *before* it reaches its intended recipient. *Mireskandari* merely states that, "Plaintiff fails plausibly to plead that NSC intercepted any electronic communication while it was in transit; at most, he alleges the illegal disclosure of data NSC held in storage." *Mireskandari*, 2013 WL 12129559, at *10 n.44. In other words, there is nothing in *Mireskandari* that precludes a viable claim under the second clause of section 631(a) for situations involving the *simultaneous* receipt of the plaintiff's communications. Moreover, *Mastel* failed to distinguish, let alone, acknowledge the aforementioned holding in *In re Facebook, Inc. Internet Tracking Litig*. Thus, *Mastel* is unpersuasive and directly conflicts with *In re Facebook, Inc. Internet Tracking Litig*.

Defendant's reliance upon *Adler v. Community.com, Inc.*, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) (Blumenfeld, J.), is misplaced. Although the plaintiffs alleged that the defendant entity accessed the plaintiffs' text communications intended for the defendant's celebrity clients before they actually reached the celebrities, the Court held that the proper inquiry was whether "acquisition" was "contemporaneous with transmission" "in a technical sense," which the plaintiffs failed to allege. *Id.* at *3-*4. The Court held that the defendant allegedly accessed the text communications "upon the completion of its transmission to the proper number." *Id.* at *4. Notably, the Court made no attempt to address the effect of automatic routing software on its analysis. Indeed, *Adler* was decided before *Saleh*. *Saleh*, 562 F. Supp. 3d at 521. And, the Court failed to distinguish either *Yoon*, 549 F. Supp. 3d at 1077, or *Revitch*, 2019 WL 5485330, at *1.

Defendant's reliance upon *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022), is misplaced because the allegations in *Rodriguez* are totally dissimilar to those at issue here. Notably, the operative complaint in *Rodriguez* alleged that defendant Google uploaded consumers' data to its servers for developers' use (with the consent of consumers), "but that Google also retained a copy for its own use." *Id.* at *2. The plaintiffs alleged that Google's act of sending a "second copy to itself" was

improper. *Id.* Significantly, in *Rodriguez*, there was not any allegation of any use of any automatic routing software to an independent, third party, unlike the allegations at issue here. (FAC ¶ 11.) Thus, Defendant's reliance on *Rodriguez* would be akin to comparing apples to oranges.

### 3. Defendant's Interpretation of the FAC Fails to Draw All Reasonable Inferences in Plaintiff's Favor.

Although Defendant contends that the FAC does not allege that Plaintiff personally used Defendant's chat feature on its Website, (Def.'s Mem. at 9 n.6; *id.* at 10 n.7), nor that Plaintiff was in California at the time that his chat communications were intercepted by an independent, third party, (Def.'s Mem. at 7 n.4), Defendant ignores that the FAC's allegations must be construed to draw all reasonable inferences in Plaintiff's favor. *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009) ("we must draw inferences in the light most favorable to the plaintiff").

The FAC alleges that Plaintiff is a California resident. (FAC ¶ 4.) Thus, it is reasonable to infer that Plaintiff was located in California at the time of his chat communications with Defendant. Also, Plaintiff alleges that he visited Defendant's Website, and that "class member conversations with Defendant were transmitted from 'cellular radio telephones' and/or 'landline telephones' as defined by CIPA." (FAC ¶ 15.) Plaintiff seeks to represent the putative class comprised of persons within California who "**communicated with Defendant via the chat feature on Defendant's Website using telephony subject to Penal Code Section 632.7**." (FAC ¶ 19) (emphasis in original). It is black letter law that a class representative must be part of the putative class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) ("a class representative must be part of the class").

### F. The Third and Fourth Clauses Are Actionable.

Given that Plaintiff states a claim under both the first and second clauses of section 631(a), Plaintiff similarly states a claim under the third and fourth clauses. As

was the case in *Revitch*, the defendant website merchant "violated section 631 by **enabling** [a third party's] wrongdoing." *Revitch*, 2019 WL 5485330, at *2 (emphasis added), *quoted in Saleh*, 562 F. Supp. 3d at 521; *Revitch*, 2019 WL 5485330, at *2 ("it does not follow that parties to communications are immune from section 631 liability").

## G.    The Term "Landline Telephone" Should Be Broadly Construed to Include Defendant's Computer Equipment.

Defendant argues that the alleged violation of section 632.7 fails to state a claim because the FAC does not allege that Defendant utilized a landline telephone to communicate with Plaintiff.   (Def.'s Mem. at 8:8-10:3.)   However, "there is no requirement that [Plaintiff] allege the type of telephonic device used by [Defendant]." *Byars*, 2023 WL 1788553, at *5 (citing *Roberts v. Wyndham Int'l, Inc.*, 2012 WL 6001459, at *4 (N.D. Cal. Nov. 30, 2012) ("In light of the dearth of case law suggesting the telephone format of both parties to a conversation must be alleged for a Section 632.7 claim, the court declines Defendants' invitation to require that Plaintiffs make such additional allegations.")).

Moreover, the Court should broadly construe the term, "landline telephone," in section 632.7(a) of the Penal Code, which is undefined, ***functionally*** as encompassing Defendant's computer equipment, which connected with Plaintiff's smart phone to transmit and receive Plaintiff's chat communications.   *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013).   Indeed, the fact that the Legislature defined the term, "Communication," to include data transmissions, (Cal. Penal Code § 632.7(c)(3)), supports Plaintiff's position.   In addition, it is beyond dispute that, "The Internet works through a series of networks that connect devices around the world ***through telephone lines***."[6]   If Defendant is using telephone lines to connect its computer servers and other equipment to the Internet, then surely the devices it is using to connect to the Internet are functionally equivalent to the "landline telephone" term in

_____

[6] https://www.britannica.com/technology/Internet/Society-and-the-Internet (last visited Feb. 23, 2023) (emphasis added).

section 632.7(a) of the Penal Code. Indeed, in *Roberts*, *supra*, the court noted that Voice over Internet Protocol "requires **internet access** and therefore **ostensibly could be construed as a landline form of telephone communication**[.]" 2012 WL 6001459, at *4 (emphasis added) (citing 47 C.F.R. § 9.3). Thus, *Roberts* lends support to Plaintiff's position. *See also Cody v. Boscov's, Inc.*, No. 8:22-cv-01434-SSS-KK, Doc. 47 at 6:1-18 (C.D. Cal. Mar. 3, 2023) (Sykes, J.) (citing *McCabe v. Six Continents Hotels, Inc.*, 2014 WL 465750, at *3 (N.D. Cal. Feb. 3, 2014) (citing cases)).

**H.    The FAC Sufficiently Alleges the Absence of Consent to Defendants' Wrongdoing.**

Defendant contends that the FAC fails to sufficiently allege lack of implicit consent as to the section 632.7 claim. (Def.'s Mem. at 10:4-11:4.) Not so. (*See* FAC¶¶ 17-18, 29.) "'Consent may be express or may be implied in fact from the '**surrounding circumstances** indicating that [the party to the call] **knowingly agreed** to the surveillance.'" *NEI Contracting and Engineering, Inc. v. Hanson Aggregates Pacific Southwest, Inc.*, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016) ("*NEI*") (citing cases) (emphasis added). "The critical question is whether the party whose communications were intercepted had **adequate notice of the interception**." *Id.* (citing *Campbell*, 77 F. Supp. 3d at 846-48) (emphasis added). "In the typical implied in fact consent scenario, a party is informed that his call will be recorded, and he continues to use the communication system **after receiving notice the communications are being intercepted**." *NEI*, 2016 WL 4886933, at *3 (citing *Negro v. Superior Court*, 230 Cal. App. 4th 879, 892 (2014)) (emphasis added). "In the absence of such notice, '[t]he surrounding circumstances must **convincingly show** that the party **knew about and consented to the interception** in spite of the lack of formal notice or deficient formal notice.'" *Negro*, 230 Cal. App. 4th at 892 (emphasis added).

In *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), the Ninth Circuit concluded that "the California Supreme Court would interpret Section 631(a) to require the **prior consent** of all parties to a communication." *Id.* at *2

1  (emphasis added).  That is, "retroactive consent" is not actionable under California law.

2  *Id.* at \*1-\*2.

3  **1.     Defendant's Reliance on *Smith v. LoanMe, Inc.* Is Misplaced.**

4  Defendant's reliance upon language in footnote 4 of *Smith v. LoanMe, Inc.*, 11

5  Cal. 5th 183, 194 n.4 (2021),[7] is misplaced for several reasons.  First, *Smith* does not

6  require or allow the Court to decide the consent issue as a matter of law.  Defendant's

7  assumption to the contrary is simply wrong.  *Smith*'s use of the word "may," which is

8  permissive, but not mandatory, indicates that the Supreme Court merely intended to

9  express the mere ***possibility*** that a reasonable inference could potentially be drawn that

10 "a party sending a communication" such as a "facsimile or text transmission" has

11 consented to having it recorded by the intended recipient.  Yet, the Supreme Court did

12 not definitively decide such issue as a matter of law.

13 Second, the Supreme Court's musings about a reasonable inference of consent in

14 the context of "a party sending a communication" such as a "facsimile or text

15 transmission" in the context of a cause of action alleging the violation of section 632.7

16 of the Penal Code is dictum,[8] which was unnecessary to deciding the precise legal issue

17 of "whether section 632.7 applies to the parties to a communication, prohibiting them

18 from recording a covered communication without the consent of all participants, or

19 whether the section is concerned only with recording by persons other than parties . . .

20 such as an individual who covertly intercepts a phone call and eavesdrops upon it."  11

21 Cal. 5th at 188.

22 Third, *Smith*'s dictum would, in essence, render the reference to "data, or image,

23 including facsimile" in subdivision (c)(3) of section 632.7 as mere surplusage and a

24 _____

25 [7] Footnote 4 states:  "The ***circumstances*** involved with certain kinds of communications ***may*** lead to a ***reasonable inference*** that a party sending a communication has consented to having it ***recorded*** by the intended recipient — ***recordation*** would be expected with a

26 facsimile or text transmission, for example."  *Smith*, 11 Cal. 5th at 194 n.4 (emphasis added).

27 [8] This is perhaps the reason why the Supreme Court relegated the quoted language cited by Defendant in footnote 4.

28

nullity, which is to be avoided. *Tuolumne Jobs & Small Business Alliance v. Superior Court*, 59 Cal. 4th 1029, 1038 (2014) ("It is a maxim of statutory interpretation that courts should give meaning to every word of a statute and should avoid constructions that would render any word or provision surplusage."). "*An interpretation that renders statutory language a nullity is obviously to be avoided.*" *Id.* at 1039 (emphasis in original). After all, if a party to a facsimile or text message always consents to the recording of such communication by the intended recipient of such communication, then why would the Legislature have specifically included the reference to "facsimile," "data", or "image" within the definition of "Communication" as actionable? If anything, the Legislature's inclusion of such terms indicates that the concept of consent is case-specific, dependent on the surrounding circumstances, and is not to be decided as a matter of law.

Fourth, regardless of whatever guidance footnote 4 of *Smith* may have to interpreting section 632.7 of the Penal Code, footnote 4 surely has no guidance in interpreting section 631(a) because section 631(a) addresses unlawful wiretapping and eavesdropping without a ***recording*** requirement.

Dated:  March 3, 2023                    PACIFIC TRIAL ATTORNEYS, P.C.

                                         By: */s/ Scott J. Ferrell*
                                         Scott. J. Ferrell
                                         Attorney for Plaintiff

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,977 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 3, 2023

*/s/ Scott J. Ferrell*
Scott J. Ferrell